STATE OF NORTH CAROLINA v. SARAH JANE BATTS

No. 704SC141

(Filed 24 June 1970)

**1. Homicide § 30— second-degree murder — submission of issue of involuntary manslaughter**

Failure of the trial court to apply the law on involuntary manslaughter to the evidence and to instruct the jury that they could return a verdict of guilty of involuntary manslaughter, *held* reversible error in this second-degree murder prosecution. G.S. 1-180.

**2. Homicide § 30— failure to submit issue of involuntary manslaughter — error not cured by verdict**

The error in failing to submit the question of defendant's guilt or innocence of involuntary manslaughter is not cured by a verdict convicting defendant of a higher offense.

**3. Homicide § 30— failure to submit issue of involuntary manslaughter — new trial — effect of punishment**

Where defendant's evidence in a second-degree murder prosecution would have warranted a verdict of involuntary manslaughter had that issue been submitted to the jury, defendant was entitled to a new trial on that ground notwithstanding the punishment imposed upon her conviction of voluntary manslaughter was within the maximum allowed for involuntary manslaughter.

ON *certiorari* upon petition of defendant to review an order of *Cowper, J.,* 14 July 1969 Session of Superior Court held in ONSLOW County.

Defendant was brought before the Onslow County District Court on a warrant charging her with the murder of her husband. That court found probable cause and bound her over to the superior court. An indictment, proper in form, was returned charging her with murder in the first degree. When the case was called, the solicitor announced that he would seek a verdict of murder in the second degree or manslaughter as the jury might find from the evidence. Defendant pleaded not guilty, was found guilty of manslaughter, and sentenced to five years in prison.

The evidence for the State and for the defendant tended to show that defendant and her husband on the day of the shooting had an argument about whether defendant would be permitted to go to Wilmington. Some of the evidence for the State and the defendant tended to show that the deceased picked up a board and started chasing defendant. The State's evidence tended to show that deceased had not been drinking and that defendant fired two shots at her husband, one over his head and the other at the ground by his

feet. The mother of the deceased testified for the State that defendant grabbed her son and shot him in the chest. Defendant's evidence tended to show that the deceased had been drinking. Defendant's testimony was in some respects contradictory, but she testified that:

> "Yes, I kept a pistol to protect myself and my children. I was afraid of him, he was always after me with a gun — I thought I could keep him off me. I fired down by his feet. I went to the porch cause he said he was going in and get his gun, so I went up on the porch to lock the door so he could not get in the house and get his gun. I looked back at his mother and that's when he grabbed me around the neck and started choking me and the gun went off accidentally. Yes, he had both hands around my throat. I am 37 years old. I have never been arrested or convicted of any criminal offense."

*Attorney General Morgan by Deputy Attorney General Lewis and Staff Attorney Hart for the State.*

*Reginald L. Frazier for defendant appellant.*

MALLARD, C.J.

Defendant contends that the court erred in failing to allow defendant's motion for judgment of nonsuit. This contention is without merit. There was ample evidence of defendant's guilt to require submission of the case to the jury.

[1]  Defendant contends, *inter alia*, that the court erred in failing to charge the jury on the law relating to involuntary manslaughter. This contention is well taken. "Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately resulting from the commission of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpably negligent manner, when fatal consequences were not improbable under all the facts existent at the time * * *." 4 Strong, N.C. Index 2d, Homicide, § 6. Although the court in the charge gave a definition substantially similar to the one above, it failed in the final mandate to apply the law on involuntary manslaughter to the evidence at the trial as required by G.S. 1-180. This constitutes reversible error. The judge in the charge to the jury limited the verdict of the jury to murder in the second degree, manslaughter, or not guilty. Under the evidence in this case, the judge should have submitted to the jury the question of the guilt or in-

nocence of the defendant of murder in the second degree, voluntary manslaughter, or involuntary manslaughter.

**[2, 3]**    The error in failing to submit the question of defendant's guilt or innocence of involuntary manslaughter is not cured by a verdict convicting defendant of a higher offense. *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969). As stated in *Moore:*

> "The reason for the rule was stated by Stacy, C.J., in *State v. DeGraffenreid*, 223 N.C. 461, 463-64, 27 S.E. 2d 130, 132: '(T)he defendant is entitled to have the different views presented to the jury, under a proper charge, and an error in respect of the lesser offense is not cured by a verdict convicting the defendant of a higher offense charged in the bill of indictment, for in such case it cannot be known whether the jury would have convicted of a lesser degree of the same crime if the different views, arising on the evidence, had been correctly presented by the trial court.' "

In the case at bar, the jury, if they believed defendant's evidence, could have found her guilty of involuntary manslaughter. Even though the punishment imposed was within the limits allowed upon a conviction of involuntary manslaughter [G.S. 14-2; *State v. Adams*, 266 N.C. 406, 146 S.E. 2d 505 (1966)], the defendant had the right to have the jury consider involuntary manslaughter in determining her guilt or innocence. *State v. Lilley*, 3 N.C. App. 276, 164 S.E. 2d 498 (1968).

Since there must be a new trial, we do not consider defendant's other assignments of error because they are unlikely to occur at the new trial.

New trial.

MORRIS and GRAHAM, JJ., concur.